Eueein, Judge,
 

 having stated the case as.above, proceeded :
 

 It is insisted for the original plaintiff
 
 Bissell,
 
 that this is the case of a judgment obtained by fraud, where the defendant was precluded from his defence, and will he relieved in this court. It is alleged too, that it was irregular, and in a case not proper for a judicial attachment, and therefore this court will put the party hack into possession of the property bought under it by the plaintiff.
 

 The first observation called for by these positions is, that all matter of irregularity is out of the case here. That is a matter of legal jurisdiction, and not the foundation for coming into equity, except so far as it may he evidence with other things of a fraud — as where those proceedings denote an anxious hurry to put a demand, proved
 
 aliunde
 
 to be, unfounded, through the forms of legal proceedings. The legal proceedings must be deemed right in this court, until the injustice of the recovery is shown by proof extrinsic of those proceedings themselves. If therefore the process of judicial attachment were not proper, that will, of itself, not avail the plaintiff. It was allowed by the proper tribunal, and the judgment founded on it must be taken to be conclusive here, although by it a recovery is made without having the party personally in court. It is not for- us to say, that it is iniquitous, when the court of law supports it; much less, when the legislature gives in certain cases that proceeding, and in others that by original attachment; in each of which personal defence is seldom made, though it is supposed that it may,. and,in
 
 *161
 
 tended that it shall be in all. The plaintiff must therefore further show, that advantage was unduly taken of him by the use of this remedy, in such a way as was intended and did preclude him from defence; and secondly, that for want of such defence a recovery was effected, not merely of sums not duly proved on the trial, or of sums which could not upon defence be recovered from him in a court of law, hut which the plaintiff at law could not recover, or having recovered, cannot retain with a good conscience by the law of this court. If indeed a judgment for a true debt be iniquitously used, the court will annul what has been done under it. Such was the case of
 
 Lord Cranstown
 
 v.
 
 Johnston
 
 cited for the plaintiff from 3
 
 Ves. 170,
 
 and 5
 
 Ves. 277.
 
 The defendant was pretending to treat with the plaintiff in England for the purchase of the estate at private sale, and while he was thus amusing him, and putting him off his guard, and his propositions were made with that intent, he gave secret instructions to an agent to proceed according to some summary colonial method to bring the estate into market, and purchase it for him. It was brought to sale, and the proceeding so shocked those present, that every one considered a good title would not he had under the sale; and nobody bid but the agent, and be purchased. .No court could sustain such a transaction. The debtor was lulled to sleep ; the creditor made the title doubtful, and under that disadvantage brought it to sale ; competition was suppressed
 
 ;
 
 and he bought at a great undervalue. His purchase was set aside on the score of fraud. Allegations are made in the bill of conduct on the part of
 
 Bozman,
 
 at the sale, in some respects of the same character. But they arc denied in the answer, and unsupported by proof. He could not have held out the idea, that he was buying for
 
 Bissell,
 
 and would allow him time to redeem ; for the latter had just defied him, and given him distinct notice that he would not redeem, but seek to set the whole aside. And witnesses speak of facts which prove that
 
 Bozman,
 
 urged bidders to give fair prices for all but the furniture, which fee suffered te be bought in -low by friends of
 
 Bissell.
 

 If a judgment has been iniquitously used, a court of equity will annul what has been done under it.
 

 
 *162
 
 where there is a confidential the plaintiff and defendant at law a court or equity-will set aside a iaultuníessíomé proof was offer-c'd’
 

 ts indorsed lipón which nothing is and notice^unnecessary to subject themdoisei
 

 Then the cause stands entirely as to the evidence of fr'aut*’ upon the justice or injustice of the recovery. And upon that head, I must repeat, that in this court the qUOStion ¡s, not whether the recovery was strictly proper by the rules of law, but whether it was against conscience to assert such a demand, and to receive payment. Both the conscience and law of the case are in general presumed in favor of the judgment of the court of law— which is taken to be conclusive here as in another court of law, unless under particular circumstances. (
 
 White
 
 v.
 
 Hall,
 
 12
 
 Ves.
 
 324.) The court in an ordinary case would therefore not put the plaintiff at law to any re-proof of his demand. But here, as there is some evidence of an express agency, and there certainly was a confuten-^ial relation to some extent between the parties, and the suit was actually undefended, some proof was necessary ,;Q tliis cause. And the defendant here has offered it of a kind entirely satisfactory, as far as it was necessary to rePe^ tbe charge of fraud. ELe proves incontestably the payment of the several sums as and for debts from the plaintiff to other persons. There is no doubt he was out of pocket to the extent recovered for those items; and in the answer to the cross bill,
 
 Bissell
 
 will not deny eithc-r of those debts, nor that he requested
 
 Bozman
 
 to pay them ; hut only that he does not remember such a request — while two- of the witnesses, one of them an officer who had some of the executions, prove that
 
 Bissell
 
 said
 
 Bozman
 
 was his agent, and referred the officer to him for payment. It is not certain, that notice' was reffu‘rei^ uPon
 
 Tarkinton’s
 
 bond, if one indorses a note upon which nothing is due, it is a fraud. Notice does n0 §ood 5 because the party already knew that payment had been made, and no further payment could beobtain-And if it clearly appeared here, that the set-off was just, and that
 
 Bissell
 
 was aware of it, there would be an end of the question even at law. But
 
 Tarkinton
 
 does not swear precisely, that his demand was a true one. He proves however, as the record of that suit does, that he pleaded and obtained the set-off; that
 
 Bozman
 
 contested both in the County Court and upon appeal, and
 
 *163
 
 jH’osecuted the suit
 
 bonaJide.
 
 it is to be recollected, that our inquiry here is, was there fraud? Had not
 
 Bosnian
 
 a right then to consider, that
 
 Tarkinion’s
 
 set-off was just? Was it dishonest in him who had lost the money by judgment of a court, to treat that judgment as rightly given? The question carries its own answer. The remaining item contested in
 
 Bosnian’s
 
 account is that of
 
 ¶>
 
 150 paid to
 
 Mrs. Bissell.
 
 This is positively sworn to by him in his answer. A witnesss, his son, says he counted out the money to carry to her, though the son did not sec him pay it.
 
 Mr. Barnet/
 
 says he has no recollection of receiving that sum, but that the receipt for it was written by him, and he cannot account for the want of his signature ; that he was not the general agent of
 
 Bissell,
 
 but often acted in his affairs at the request of himself or his wife, and sometimes without request, because he thought it for his benefit. And ho states that
 
 Mrs. Bis-sell
 
 talked of getting money 'from
 
 Bosnian,
 
 but he does not know whether she did or not. The direct testimony of
 
 Bissell's
 
 wife cannot be had to the point. Hut he is interrogated in the cross bili as to the information derived from her, and his belief; to which he answers, as if making a special avoidance, not by way of general denial, but qualifying ti»at denial, as first framed, by restricting the statement made by her to this ; that she did not receive that sum by the
 
 hands of Barney,
 
 and that ho believes that
 
 Bosnian
 
 did not pay the money
 
 to Barney aforesaid.
 
 This is special pleading on oath, and so plainiy evasive, as almost to amount to proof of itself, that
 
 Mrs. Bissell
 
 did
 
 in some waij
 
 receive the sum
 
 ;
 
 and at all events, with the other evidence, establishes the fact to an extent so nearly amounting to a moral certainty, as to leave no ground for impeaching the judgment upon the score of conscience.
 

 The remaining ground on which
 
 Bissell
 
 contests the judgment at law, is that of a mutual demand for money paid
 
 Myers
 
 &
 
 Son
 
 for the disbursements of a vessel of the defendant. These disbursements occurred in February, 1816, when
 
 Messrs. Myers
 
 had effects,of
 
 Bosnian
 
 in their hands to a large amount. They several times
 
 *164
 
 rendered accounts to
 
 Bowman,
 
 and paid the balances ; in which, they say, this sum ivas omitted through haste and mistake. In July, 1820, they applied to
 
 Bissell
 
 then in Norfolk for payment j which he refused upon the ground that he was notliable and of length of time, and referred them to
 
 Bowman.
 
 Of this
 
 Bissell
 
 advised
 
 Bowman
 
 under date July 18th, and on the same day
 
 Myers
 
 forwarded the account to
 
 Batsman,
 
 who refused to pay
 
 it;
 
 whereupon it was put into an attorney’s hands, but no proceedings. of law seem to have been had.
 
 Bissell
 
 had effects in the hands of
 
 Messrs. Myers,
 
 and among them a bill on the West Indies, which they were to collect for him. They failed, and made an assignment; and up to that time had received payment from no quarter But in May, 1824, they write to
 
 Bissell,
 
 that in 1822 their correspondent in Jamaica had given them credit for the bill, which they had hot noticed until a late overhauling of their books and papers. They then advise him, that they have given him credit for that .sum
 
 ;
 
 and to liquidate it have
 
 charged to him
 
 the brig
 
 William’s
 
 disbursements. Whether
 
 Bissell
 
 was originally liable for that debt, or could pay it after eight years and his former refusal, and thereby charge
 
 Batsman
 
 upon the new contract to himself, after the latter had refused to pay
 
 Messrs. Myers themselves;
 
 or whether this charging by bankrupts in discharge of a debt from themselves be such a payment as renders'Uoamau a debtor therefor ; are questions not necessary or proper now to be decided. They will come up more properly upon the accounts hereafter to bo taken, on another branch of the cause. But taking
 
 Batsman
 
 to be now liable' for that debt, it entirely fails as evidence of fraud in taking the judgment. In that point of view it is subject to this decisive observation.
 
 Batsman
 
 contested that claim as against the original
 
 claimants;
 
 and at the time of taking the judgment, was not only ignorant that the debt was charged to
 
 Bissell;
 
 but the latter was also ignorant of it. For the judgment was in December, 1823, and the letter of Messrs.
 
 Myers
 
 to
 
 Bissell
 
 is dated May 28th, 1824.
 

 
 *165
 
 If the mortgagee obtains judg ment and execution for the mortgage debt, and under the act of 1812,
 
 (Rev. c.
 
 830,) sells the equity of redemption, and becomesthe purchaser, how is the relation between him and the mortgagor affected thereby ?
 
 Qu. ,
 

 It must therefore be declared, that the judgment was for a just debt, which
 
 Boaman
 
 might in good conscience receive.
 

 This would dispose of the original bill, as it is not framed on the foot of the mortgages and the right of redemption. Indeed it denies the obligation at any time on
 
 Bissell
 
 to redeem the slaves. The
 
 gravamen
 
 of it is the fraud in getting, by an irregular proceeding, a judgment at law for a debt not due, and using the execution iniquitously. It sets out indeed the original debts and mortgage ; but it is only to show, that they had been discharged; and there is no question made in the bill, upon the right of the mortgagee to sell the mortgaged estates for that debt; but the prayer is, to set aside the execution sale. Upon the grounds relied on, there is no foundation in the facts to support the prayer ; and the bill ought to be dismissed, and would be dismissed at once were the plaintiff not entitled to relief upon other parts of the pleadings. For which reason, both causes will be retained, until the case shall be finally disposed of.
 

 It has however been further insisted for
 
 Bissell,
 
 that the sale under execution does not bar redemption, hut being for the mortgage debt, leaves that equity untouched, especially as to those parts purchased by the mortgagee. This depends upon the construction of the act of 1812. The question was touched in
 
 Cox
 
 v.
 
 Camp,
 
 (2
 
 Dev. Rep.
 
 502,) and was then said to be a difficult one. Upon further consideration I think it extremely difficult —in reference as well to the case, where a stranger purchases when the sale is made for the mortgage debt, known so to be, as where the mortgagee himself does. In this case, however, it does not arise. As to the purchases by others, they are not made parties to the original bill, if that were properly a bill to redeem ; and consequently their titles are confirmed, and the price or the valuó taken as a substitute for the property. As to those made by
 
 Batanan
 
 himself; taking a sale under an execution to he a statute foreclosure, it must be admitted, that it is, as yet, a doubtful and unsettled doctrine ; and being so, the creditor has found himself under the ñecos-
 
 *166
 
 sity of coming hero, to ask that his defeasance may be brought into court, his title, confirmed, and the mortgagor foreclosed. Equity does not lean to foreclosures, especially at short ¡¡and. It is true, that after what it deems reasonable timo, it gives the mortgagee the benefit of the condition in law, and declares his estate absolute. Yet that is felt to be a ease of hardship, and often to produce injustice. Hence any consent, express or implied, is seized as an occasion to open the estate to redemption upon payment of the debt, which is the real justice between the parties. If therefore upon a hill to redeem after any length of time, the defendant
 
 submit
 
 to „ redemption, it will be decreed.
 
 (Proctor
 
 v.
 
 Oats,
 
 2
 
 Atk.
 
 140.) So if the mortgagee get a decree of the court of equity itself for foreclosure, and afterwards take out process upon any collateral security for the same debt, he waives the decree, if the mortgagor chooses.
 
 (Dashwood
 
 v.
 
 Blythway. 1 Eq. Ca. Abr.
 
 317.) The reason is, he treats the debt as still due, and therefore his title as not absolute. Much more here, where the title is very doubtful in law, shall a bill for further foreclosure, if I may use the expression, remove that which I will not say has taken place, hut may have taken place. It is true, the cross bill does not unequivocally admit the right of redemption, hut prays for foreclosure, in case the debtor has the right. For this purpose, this is the same as a general prayer. The court is asked to investigate the accounts, and settle the title. Upon the footing therefore of the cross hill, the case
 
 is
 
 open for redemption upon payment of principal and interest, allowing to the debtor, in the accounts, credit for the value • or price of such parts of the mortgaged effects as third persons bought; and a reference will be ordered accordingly. No directions are given about the application of the payments of the proceeds of the sales to particular debts, as would have been necessary, had the judgment at law been impeached by the decree ; but as that stands untouched, and it is a common equity for mortgagees, as against the mortgagor himself, to tack judgments, the whole debt must be considered as the in-
 
 *167
 
 cumbrance, subject to such reductions as the debtor can •make appear before the master.
 

 
 *166
 
 But where a mortg’agee purchases at a sheriff’s sale, and filed a bill to have liis title confirmed, held that he thereby consented to open the estate to redemption.
 

 If after foreclosure the mort gagee in any other way treats the debt as still due, the account will be opened.
 

 
 *167
 
 Per Curiam. — Decree accordINgut.